IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RHONDA MITCHELL and        )
    JOHN C. STUBBS,         )
                            )
            Plaintiffs,     )
                            )
    v.                      )    Civil Action No. 11-430
                            )
PLASMACARE, INC.,           )
                            )
            Defendant.      )

## MEMORANDUM OPINION

Pending before the Court is a motion filed by PlasmaCare, Inc.
("PlasmaCare"), seeking an Order of Court dismissing Plaintiffs'
complaint in its entirety pursuant to Federal Rule of Civil Procedure
12(b)(6) ("Mot. Dis.," Doc. No. 4.) For the reasons that follow,
Defendant's motion is denied without prejudice.

## I.    INTRODUCTION

### A.    Factual History[1]

PlasmaCare is a nationwide chain of plasma donation
centers, one of which is located in downtown Pittsburgh,
Pennsylvania. (Mot. Dis., n. 1.) A few days before Christmas 2009,
Plaintiffs Rhonda Mitchell and her uncle, John C. Stubbs, planned
to donate plasma to get extra money to cover the cost of Mr. Stubbs'
Christmas dinner. They decided to go to PlasmaCare after Ms.

---

[1]    Unless otherwise noted, the facts in this section are taken from the
Complaint and construed in favor of Plaintiffs.

Mitchell graduated from a parenting skills program on December 22, 2009.

When Plaintiffs went to the PlasmaCare facility, Ms. Mitchell was dressed as an elf since the graduation ceremony was combined with a Christmas party. The lower part of her costume consisted of white leggings. At PlasmaCare, both Plaintiffs signed in to donate plasma. Ms. Mitchell then went back outside to establish a time for her jitney driver to pick them up later. While Ms. Mitchell was gone, two employees of PlasmaCare began making comments to other employees and clients that Ms. Mitchell was a "ho," since "only a ho would dress like that." (Complaint, ¶ 5.) After a few minutes, the facility manager, identified only as Bill, came out and overheard the derogatory remarks, but made no effort to stop "the shenanigans."

Although Ms. Mitchell was outside at the time, Mr. Stubbs was in the waiting room and endured several minutes of PlasmaCare workers using the word "ho" and several other derogatory terms. He then "shouted out for everyone to back off" and informed them that Ms. Mitchell was his niece. (Complaint, ¶ 6.) The comments continued, however, and in fact became even more insulting, suggesting that Plaintiffs were committing incest. At that point, another PlasmaCare employee, Karen Rose, told her co-workers such comments were unprofessional and they stopped.

When Ms. Mitchell came back into the facility, Ms. Rose told

2

her about the comments that had been made and politely asked her to put on a pair of shorts or a skirt if she "wanted to donate and to avoid the ignorance of [Ms. Rose's] PlasmaCare Pittsburgh co-workers." (Complaint, ¶ 7.) Although Ms. Mitchell complied with the request, she and Mr. Stubbs left without donating.

Ms. Mitchell claims that several times since the December 2009 incident, she has been approached by men requesting sexual services. She has also spoken with a former PlasmaCare worker who told her that employees make jokes and comments about the incident. Similarly, Mr. Stubbs has gotten into a physical altercation with an unknown man who commented to him about his niece and their relationship.

As a result of these "malicious, untrue and ridiculous lies, jokes and comments" perpetrated by Defendant's staff, Plaintiffs have been "subject to daily bouts of anxiety, anger, headaches and acute defensiveness whenever they are out and about in Pittsburgh." They also suffer "periodic sleeplessness when thinking about the disrespect and lies." This disrespect also "infringes on Plaintiffs' liberty to donate plasma, receive compensation[], and do a community service." (Complaint, ¶¶ 11-13.)

B. Procedural History

Acting *pro se*, Plaintiffs filed suit on December 14, 2010, in the Court of Common Pleas of Allegheny County. Pursuant to 28 U.S.C. § 1441, Defendant timely removed the case to this Court on

March 31, 2011,[2] based on complete diversity of the parties[3] and an amount in controversy greater than the statutory minimum. Plaintiffs did not object to removal.

In their Complaint, Plaintiffs state that their allegations against PlasmaCare "are squarely rooted upon defamation and slander under the laws of Pennsylvania." (Complaint, ¶ 14.) Plaintiffs seek compensatory damages for losses to their "social dignity, volunteer compensations, and extreme emotional and mental duress by defamatory innuendos and gossip of incest between Plaintiffs" by PlasmaCare employees. (Id., Section IV, Relief.) They also seek punitive and exemplary damages for PlasmaCare's extraordinary breach of standards, ethics, supervision, discipline, and training of its employees. The Court assumes Plaintiffs are seeking an injunction in that they request "an independent court-directed investigation into the allegations of wide-spread unprofessional, unethical and derogatory behaviors" of PlasmaCare employees and an order of Court "directing supervision, disciplinary actions and re-training(s)" at the PlasmaCare facility in order to assure "equitable safety, dignity and respect" for Defendant's employees and clients. (Id.)

---

[2] The case was apparently allowed to lapse but Plaintiffs filed a praecipe to reinstate the complaint on March 1, 2011.

[3] According to the Complaint, Plaintiffs are citizens of Pennsylvania. Defendant, a Delaware corporation, has its principal place of business in Cincinnati, Ohio. (Notice of Removal, ¶¶ 7-10.)

## C. Jurisdiction and Venue

As noted above, this Court has jurisdiction based on complete diversity of the parties and, according to the Complaint, an amount in controversy totaling at least $3 million. *See* 28 U.S.C. § 1332(a)-(c). Venue is appropriate in this district under 28 U.S.C. § 1391(a).

## II. **STANDARD OF REVIEW**

In the aftermath of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and the interpretation of those two cases by the Third Circuit Court of Appeals, the pleading standards which allow a complaint to withstand a motion to dismiss pursuant to Rule 12(b)(6) have taken on slightly new parameters. The standard is now whether the complaint includes "sufficient factual matter to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009); *see also* Twombly, 550 U.S. at 555, holding that a complaint which offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." The Fowler court further directed that in considering a motion to dismiss, the district court should undertake a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are

sufficient to show that the plaintiff has a plausible claim
for relief. In other words, a complaint must do more than
allege the plaintiff's entitlement to relief.      A
complaint has to show such an entitlement with its facts.
As the Supreme Court instructed in Iqbal, "[w]here the
well-pleaded facts do not permit the court to infer more
than the mere possibility of misconduct, the complaint has
alleged - but it has not shown - that the pleader is
entitled to relief."

Fowler, 578 F.3d at 210-211 (quotations and citations omitted.)

"A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."

Iqbal, 129 S. Ct. at 1949; see also Gelman v. State Farm Mut. Auto.

Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009), and Mayer v. Belichick,

605 F.3d 223, 230 (3d Cir. 2010). "Determining whether a complaint

states a plausible claim for relief will. . .be a context-specific

task that requires the reviewing court to draw on its judicial

experience and common sense."      In re Ins. Brokerage Antitrust

Litig., 618 F.3d 300, 361 (3d Cir. 2010), quoting Iqbal, 129 S. Ct.

at 1950.   A complaint should not be dismissed even if it seems

unlikely the plaintiff can prove the facts alleged in the complaint

or will ultimately prevail on the merits.   The Twombly pleading

standard "does not impose a probability requirement at the pleading

stage, but instead simply calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary

element."   McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009)

6

(internal quotations omitted.)

## III. **ANALYSIS**

Inasmuch as Ms. Mitchell and Mr. Stubbs are acting *pro se*, this Court will liberally interpret their pleadings as required by the United States Supreme Court and the Court of Appeals of this Circuit. *See* Dasilva v. Sheriff's Dep't, No. 10-1406, 2011 U.S. App. LEXIS 1095, *5 (3d Cir. Jan. 20, 2011), *citing* Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers.")

Defendant argues that Plaintiffs have failed to state a viable cause of action for defamation, more specifically slander, because the statements made by its employees were "nothing more than opinions and name-calling." (Mot. Dis., ¶ 5.) As such, the statements allegedly made on December 22, 2009 – although they may have been embarrassing or annoying to Plaintiffs -- fail to satisfy the requirements for stating a cause of action under Pennsylvania law. In short, no matter how unjustified, unreasonable, and derogatory the statements made by its employees may have been, the comments did not rise to the level of defamation and therefore are not actionable. (Defendant's Memorandum of Law in Support Motion to Dismiss, Doc. No. 5, "Def.'s Memo," at 6, *citing* Feldman v. Lafayette Green Condo. Ass'n, 806 A.2d 497, 501 (Pa. Commw. Ct. 2002), and Kryeski v. Schott

Glass Techs., 626 A.2d 595, 601 (Pa. Super. Ct. 1993).) In the alternative, Defendant contends that the statements allegedly made by its employees about Ms. Mitchell and Mr. Stubbs were nothing more than "merely annoying or embarrassing or no more than rhetorical hyperbole or a vigorous epithet" and therefore not defamatory. (Def.'s Memo at 5, *citing* Beverly Enters. Inc., v. Trump, 182 F.3d 183, 187 (3d Cir. 1999).)

In response, Plaintiffs assert that the comments made by PlasmaCare staff were more than mere opinions and name-calling and, in fact, are insinuations of criminal activity,[4] specifically prostitution and incest. (Plaintiff's [sic] Response Contra to Defendant's Motion to Dismiss, Doc. No. 11, at 2-3.) They argue that the comments were "intentional, malicious and purposeful[ly] directed at Plaintiff Mitchell and have escalated into character assassination of both Plaintiff Mitchell and her uncle, Plaintiff

---

[4] Defendant argues in its reply to Plaintiffs' response that this Court cannot act as an advocate for Plaintiffs by apprising them of causes of action of which they were not aware, i.e., slander per se. (Doc. No. 13 at 1.) We agree with the position of the concurring judge in one of those cited cases, Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997), i.e., "We have never held that a district court is obliged to apprise plaintiffs of statutory causes of action of which they are not aware. Obviously, were we to do so, we would come dangerously close to requiring district courts to assume the role of advocate for the pro se plaintiff." But, as noted by Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), *pro se* "litigants with meritorious claims should not be tripped up in court on technical niceties." The Court has not apprised Plaintiffs of the concept of slander per se; rather the distinction between general slander and slander per se was introduced by Plaintiffs in their response to the motion to dismiss (albeit without using the more specific term) and by Defendant in its reply.

Stubbs." (Id. at 3.)[5]

Pennsylvania[6] recognizes three forms of defamation – slander, libel and invasion of privacy. Joseph v. Scranton Times, L.P., 959 A.2d 322, 334 (Pa. Super. Ct. 2008). Slander is defamation by words spoken. Sobel v. Wingard, 531 A.2d 520, 522 (Pa. 1987). As the Joseph court has described the tort of defamation, a statement

> is defamatory if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession. In order to be actionable, the words must be untrue, unjustifiable, and injurious to the reputation of another. When communications tend to lower a person in the estimation of the community, deter third persons from associating with him, or adversely affect his fitness for the proper conduct of his lawful business or profession, they are deemed defamatory.

Joseph, id. (multiple citations omitted.)

The elements of a claim of defamation are defined by statute

---

[5] Plaintiffs attach to their Response an affidavit from Ms. Mitchell, as well as an amended affidavit at Doc. No. 15. The Court has not taken into account either form of the affidavit in reaching the decision herein. When considering a motion to dismiss under Rule 12(b)(6), the court's review is limited to the complaint itself, exhibits attached to the complaint upon which the claims are based, and "undisputedly authentic documents" that the defendant provides with the motion to dismiss, again assuming the plaintiff's claims are based on those documents. See In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). An affidavit attached to a response is thus outside the scope of review under Rule 12(b)(6). Although pro se litigants' pleadings are to be construed liberally, court are not to interpret the rules of civil procedure "so as to excuse mistakes by those who proceed without counsel." McNeil v. United States, 508 U.S. 106, 113 (1993).

[6] Although not addressed by the parties, a court sitting in diversity applies the substantive law of the state in which it sits. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007).

in Pennsylvania. The plaintiff has the burden of proving:

   (1) The defamatory character of the communication;

   (2) Its publication by the defendant;

   (3) Its application to the plaintiff;

   (4) The understanding by the recipient of its defamatory
   meaning;

   (5) The understanding by the recipient of it as intended
   to be applied to the plaintiff;

   (6) Special harm resulting to the plaintiff from its
   publication; and

   (7) Abuse of a conditionally privileged occasion.

Mzamane v. Winfrey, 693 F. Supp.2d 442, 476-477 (E.D. Pa. 2010),
citing 42 Pa. C.S. § 8343(a); see also Reardon v. Allegheny College,
926 A.2d 477, 484 (Pa. Super. Ct. 2007).

   "[I]n an action for defamation, it is the court's duty to
determine if the publication is capable of the defamatory meaning
ascribed to it by the party bringing suit." MacElree v. Philadelphia
Newspapers, Inc., 674 A.2d 1050, 1053 (Pa. 1996); Reardon, id.; see
also Hudak v. Times Pub. Co., Inc., 534 F. Supp.2d 546, 558 (W.D.
Pa. 2008), citing Marier v. Maretti, 671 A.2d 701, 704 (Pa. Super.
Ct. 1996) (whether a statement is capable of defamatory meaning is
a question of law to be decided by the court.) "In determining
whether a communication is defamatory, the court must view the
statement in context with an eye toward the effect the statement is

10

fairly calculated to produce, the impression it would naturally

engender, in the minds of the average persons among whom it is

intended to circulate." Hudak, id., *quoting* Remick v. Manfredy, 238

F.3d 248, 261 (3d Cir. 2001) (internal citations and quotations

omitted.)

The Court concludes that the statements allegedly made by

PlasmaCare employees are capable of defamatory meaning.[7]  In the

Complaint, Plaintiffs allege that after Ms. Mitchell had gone outside

to talk with her jitney driver,

> two (2) female employees of PlasmaCare Pittsburgh were
> leading several other employees and clients with jokes,
> puns and insulations [sic] that Ms. Mitchell was dressed
> like a (quote) "HO" (unquote) and that she (Ms. Mitchell)
> was a "ho" since (quote). . .Only a Ho would dress like
> that (unquote.)

(Complaint, ¶ 5, capitalization and punctuation as in the original.)

They also allege that while Mr. Stubbs was sitting in the

PlasmaCare waiting area, he

> endured several minutes of several PlasmaCare Pittsburgh
> workers referring to his niece as a "Ho," "Prostitute,"
> "Tramp," "Bitch," until Mr. Stubbs shouted out for
> everyone to back off and that Ms. Rhonda Mitchell is his
> eldest niece.  Despite Mr. Stubbs' announcement

---

[7] In fact, such statements, assuming they are not simply "pure opinion,"
would be regarded as slander per se. *See* Clemente v. Espinosa, 749 F. Supp.
672, 677 (E.D. Pa. 1990), recognizing that Pennsylvania distinguishes a
subset of defamatory statements as slander per se, that is, "words imputing
(1) criminal offense, (2) loathsome disease, (3) business misconduct, or
(4) serious sexual misconduct;" *see also* Restatement (Second) of Torts §
570.  There is little question that referring to a woman as a "ho," i.e.,
a prostitute, and stating that she and her uncle were committing incest
are words imputing both criminal offenses and serious sexual misconduct.

11

PlasmaCare workers and clients still had comment[s] to say about his niece's holiday outfit and PlasmaCare Pittsburgh workers began adding that Ms. Mitchell was probably (quote) "fucking her uncle too" (unquote).

(Complaint, ¶ 6.)

In sum, Plaintiffs allege that clients and employees of PlasmaCare made two types of comments: (1) Ms. Mitchell was dressed like a prostitute and therefore was a prostitute, and (2) Ms. Mitchell and Mr. Stubbs were probably committing incest.

Under Pennsylvania law, only statements of fact, rather than mere expressions of opinion, are actionable as defamation. Mzamane, 693 F. Supp. 2d at 477. As Defendant points out, Pennsylvania courts have adopted the Restatement (Second) of Torts ("Restatement") which recognizes that a defamatory statement in the form of an opinion is actionable "only if it implies the allegation of undisclosed defamatory facts as the basis for that opinion." (Def.'s Memo at 5, citing Restatement, § 566.) Where "the maker of the comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character," the expression is not actionable. (Restatement, § 566, cmt. b.) This is the so-called "pure opinion." Defendant contends that no matter how unjustified or unreasonable the comments made by its employees may have been, when reduced to their "fundamental essence," the comments were no more than opinions

12

and name-calling because the employees stated the reason for their opinion, i.e., that Ms. Mitchell was "dressed like a 'ho.'"

However, Defendant fails to take into account statements of "mixed opinion." As the Restatement explains,

The mixed type of opinion expression is one which is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication. Here the expression of opinion gives rise to the inference that there are undisclosed facts that justify the forming of the opinion expressed by the defendant.

(Restatement, § 566, cmt. b.)

According to the Complaint, PlasmaCare workers stated "that Ms. Mitchell was dressed like a (quote) 'HO' (unquote) and that she (Ms. Mitchell) was a 'ho' since (quote). . .Only a Ho would dress like that (unquote.)" (Complaint, ¶ 5.) As Defendant argues, Plaintiff does allege that the PlasmaCare employees stated the basis for their opinion - Ms. Mitchell was dressed like a prostitute - but that reason itself is capable of defamatory interpretation. The Court is not willing, at this point in the proceedings, to dismiss this rather circular statement as simply "pure opinion."

Moreover, as alleged in the Complaint, when making the statement "that Ms. Mitchell was probably (quote) 'fucking her uncle too' (unquote)," no basis for that conclusion is given. Where an opinion does not identify the facts on which it is based (or in instances where both parties to the communication know or assume the underlying

13

facts), it implies the existence of undisclosed facts and is actionable. *See* Rockwell v. Allegheny Health, Educ. & Research Found., 19 F. Supp.2d 401, 406 (finding defendant's statements suggesting that the plaintiff was having an inappropriate sexual relationship and abused the company's time-off policy constituted an actionable mixed opinion when the opinions were "not founded on any disclosed facts and suggest[ed] the presence of undisclosed immoral activity.")

At this point in the proceedings, based on allegations stated in the Complaint, we must assume that Ms. Mitchell is not a prostitute and that she and Mr. Stubbs have not committed incest. We further conclude that the statements allegedly made by Defendant's employees could be viewed as statements of mixed opinion. *See*, e.g., White v. Brommer, 747 F. Supp. 2d 447, 475-476 (E.D. Pa. 2010) (the defendant's statement to the plaintiff's employer that he had been arrested for public drunkenness and disorderly conduct, contrary to the plaintiff's assertions in his complaint, was a mixed opinion since the defendant did not disclose all the facts on which his statement was based); and Synthes (USA) v. Globus Med., Inc., CA No. 04-1235, 2005 U.S. Dist. LEXIS 19962, *9-*11 (E.D. Pa. Sept. 14, 2005) (statement that one plaintiff was "dangerous" and that another "will never work in [a given] hospital again" suggested that the speaker was aware of potentially defamatory undisclosed facts and the

14

defamation claim would be allowed to proceed.)

We have also considered Defendant's alternative argument that the comments by its employees about Ms. Mitchell and Mr. Stubbs were "merely annoying or embarrassing or no more than rhetorical hyperbole or a vigorous epithet" and therefore not defamatory. We agree not every use of terms implying sexual misconduct is necessarily defamatory. *Compare* Gavrilovic v. Worldwide Language Resources, Inc., 441 F. Supp.2d 163, 182 (D. Me. 2006) (references to plaintiff using language that implied she was "a whore who slept around promiscuously" and "a sexual plaything" was slander per se), *with* Reno v. Mellon, 2009 N.Y. Misc. LEXIS 1562, * 29 (N.Y.S. Mar. 31, 2009) (unpublished) (referring to the plaintiff as a "whore" was no more than "mere hyperbole and name-calling," given the parties' turbulent personal relationship.) The court in such instances should consider the context, the relationship between the parties, and the events in making such a determination. *See*, e.g., Mathias v. Carpenter, 587 A.2d 1, 2 (Pa. Super. Ct. 1991) (the court must view the allegedly defamatory communication in context to determine whether the statement was malicious or "tended to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession"); Wolgin v. Smith, CA No. 94-7471, 1996 U.S. Dist. LEXIS 18969, * 9 (E.D. Pa. Dec. 23, 1996) (claims that the plaintiff was "a crook" who "cheated" and was

"not trustworthy" were not only opinion, but were made during a business dispute that had "gone sour.") There is nothing in the Complaint from which the Court can infer, for example, that there was any prior animosity between Defendant's employees and Plaintiffs, nor that the comments were made in the course of an argument when such terms might be used as vulgar outbursts or epithets. *See* Restatement, § 566, cmt. e, recognizing that "reasonable listeners" understand a "certain amount of vulgar name-calling is frequently resorted to by angry people without any real intent to make a defamatory assertion" during the course of an altercation.

We conclude that the facts alleged in Plaintiffs' Complaint are sufficient to establish a claim for slander and that they have stated a plausible claim for relief. *See* Fowler, 578 F.3d at 211. An appropriate Order follows.

June ___2___, 2011                          *William L. Standish*

                                            William L. Standish
                                            United States District Judge

cc:  Counsel for PlasmaCare, Inc. via ECF

     Rhonda Mitchell
     2015 Drum Street
     Pittsburgh, PA  15214

     John C. Stubbs
     2015 Drum Street
     Pittsburgh, PA  15214

16